Lokhova versus Halper and Mr. Biss will hear from you first. Thank you, Your Honor. May it please the court. My name is Steve Biss. I represent Svetlana Lokhova in this appeal. We are asking the court to reverse the district court's finding of sanctions and the dismissal of the claims of defamation and tortious interference with contract. It's been fully briefed, so I'm going to try not to go over all the issues in the case. I want to get on three points, three reasons why we believe this case should be reversed. Number one, the letters at issue are not protected by an absolute privilege. The allegations in the complaint that Ms. Lokhova filed are that these particular letters were delivered with one purpose only, and that purpose was to cause the termination of her book contract. And I'm going to presume that the court has familiarity with the facts in the case. Now, the case is about this concept of absolute privilege, and the Virginia Supreme Court has addressed it. There's really two seminal cases from the Virginia Supreme Court, and when I say seminal cases, I mean in the last 20-odd years. The Lindeman case is the case that we cited to district court. We've also cited it extensively in our brief. And in Lindeman, the Virginia Supreme Court said that the absolute privilege does not apply to mere litigation or the mere threat of litigation, and we've cited the case extensively. The Mansfield case was decided after Lindeman, and the Mansfield case involved pre-filing demand letters, such as we have in this case. So we have pre-filing demand letters. We can eliminate the possibility that this case involves pleadings or any other type of paper that was filed in an actual proceeding, because here Mr. Helper never commenced any proceeding ever, not at all. So Mansfield adopted the that in order for the absolute privilege to apply to these pre-filing demand letters, the proponent of the letters must have contemplated in good faith, the litigation must be contemplated in good faith and under serious consideration. In our brief on page 27, we address the numerous reasons why we don't believe Mansfield applies. We address those to the district court, why we believe in good faith Mansfield doesn't apply. The issue really from the sanction standpoint is, did we file a lawsuit in direct contravention of the Virginia Supreme Court? Counsel, wouldn't it be more direct to say the Supreme Court of Virginia having adopted the restatement in Mansfield, that the question would be whether the district court applied the essential questions from the restatement that the Virginia Supreme Court set out specifically in restatement were met? Judge Agee, I actually agree that that's really where we, no matter how you look at this issue, you get back to the issue of, is there a record? And the answer to that is no. When you look at the Mansfield, the points that the Supreme Court raised in Mansfield, you come to the conclusion that there's, at the very least, there are issues of fact that ought to be not decided by the district court, but decided by the fact finder in this case. The Virginia Supreme Court decided a case, and this was going to be my second point, but I'll sort of dovetail into it. The Virginia Supreme Court decided a case on October 14 of 2021 after briefing. We submitted the cases as supplemental authority. I think it's document 28. The case is Javago Growth versus iTech AG, and the case was, it's document 28 in the record in this case. And in that case, the Virginia Supreme Court clearly affirmed that the concept of absolute privilege is an affirmative defense. So when you look at the Mansfield principles, and I'll get more into Javago in a second, but when you look at the Mansfield, the points in Mansfield, clearly this case is distinguishable from Mansfield. And again, on page 27 and 28 of our brief, we cite, and I can read them to your honor, but your honor can read them just as well as I can. This particular case, these demand letters- But it would require a factual record upon which a district court could make findings. No question. So in this case, other than the complaint and the motion for sanctions, what record is there? There is no other record. There's no record. So the question is, if the court accepts as true, if the district court accepts as true the allegations in the complaint, we're left with the proposition that these particular letters were not sent because of litigation that was contemplated in good faith and under serious consideration, but rather they were sent because the defendant was trying to terminate a book contract. Now, we cited in our reply brief a number of cases from Massachusetts, and the Larson case being the leading case, and the Larson case cites all the other controlling cases. These Massachusetts cases are important because they stand for the proposition that prefiling demand letters cannot be used to effectuate unlawful acts, such as tortious interference with a contract. I would commend those cases, even though they're not controlling on the court. They clearly are controlling under the facts of this case because Ms. Lokova alleges that the purpose of these letters was solely to terminate her book contract, and that's exactly what they did. Let me ask you this. Yes, sir. I understand that argument with respect to the defamation claim. There's an absolute privilege in defamation claims for those letters, but the letters have to meet the criteria set forth in the various cases and in the restatement. But are those letters privileged with respect to tortious interference? Judge, is there any potential claim that they could be protected with respect to the tortious interference claim? No, sir. That gets me to the second point, the Javago growth case. The Virginia Supreme Court in the Javago growth case decided the implication, this is how the Virginia Supreme Court phrased it, the implication from Donahoe. Donahoe was a case in which a list pendens was filed and there were claims of slander of title, which is basically defamation and abuse of process. In the Javago growth case, the Virginia Supreme Court decided, number one, absolute privilege is an affirmative defense. Number two, the Virginia Supreme Court said clearly and unequivocally that the court had never extended the concept of absolute privilege to non-defamation torts and the court held... Well, the protection, the privilege, as I understand it, extends only to the defamatory conduct that would be contained in the letters if you based them on the letters. That's correct, your honor. Yeah, it seems to me that the issue of whether you stated a good claim, a legitimate claim for tortious interference, which is probably the thrust of the whole complaint, the letters are sort of irrelevant. I agree with that. The Javago growth case says very clearly that absolute privilege does not defamation tort claims. It's directly on point. I mean, it is on the question of the legal application of absolute privilege. The third point that I wanted to make was that at the very least, there are factual issues for the jury to decide. The significant factual issue, the most significant factual issue is the motive in sending these letters to only the publisher and distributor. And we look at a couple of cases that we've cited, the Fields versus Sprint Corporation case. Judge Locke overruled a motion to dismiss under Rule 12B6 because the question was, what was the intent of the defendant in taking the action that was putatively privileged? And Judge Locke in the Fields case said that the defendant in that case, the plaintiff in that case had alleged clearly that defendant did not take the action in contemplated in good faith, in furtherance of the serious contemplation of litigation. The Rodarte case that we also cite to the court from the Western District of Virginia, Judge Conrad in that case also held that it's an issue of fact as to whether or not the defendant intended, and Rodarte involved a complaint to the police, which included defamatory material. And Judge Conrad held in that case that it was a factual issue as to whether the defendant contemplated a proceeding in bad faith. Not good faith, but the proceeding has to be contemplated in good faith. And Judge Conrad said, well, if you are defaming the plaintiff to the police, you're publishing defamatory material, or as in our case, if you are taking action that is designed, calculated to tortiously interfere with a contract, that's not something that is contemplated in good faith and under serious consideration, because it's not good faith. Intending to tortiously interfere with somebody's book contract, that's not good faith. And so, there are factual issues at the very, very least here. Mr. Biskoff, can I ask a question? Yes, sir. So, that statement that the letters were sent with the intent to tortuously interfere with a contract, is that a factual allegation or a legal conclusion that the district court was free to ignore? Judge, I think it's a factual allegation. It goes to the intent of the writer and the defendant and his attorney. It goes to their intent. We have also alleged in paragraph 19 of the complaint, facts that support that allegation. So, number one, they only sent the letter to the two entities that were involved in the book contract. They didn't send the letter to amazon.com, where the book was being advertised for sale, or Barnes and Noble, where the book was being advertised for sale. Clearly, it was their intent to interfere with this book contract and get the publisher to terminate the book contract, which they succeeded in doing. So, to answer your question directly, I would submit to your honor that these are factual issues ultimately for the jury to decide. And there's an unpublished decision that we cite, I believe in our reply brief, it might be in our main brief. It's the and in the Cool Vent case, this court's unpublished decision, but this court found that on the question of whether an attorney's letter was absolutely privileged, that the plaintiff was, that discovery was necessary. And I would submit to your honors that that discovery is necessary in this case as well. Can I ask a follow up to Judge DeMeier's about how far the privilege extends to, and you made the argument that it wouldn't, I think you're making the argument that even if the privilege would apply to a action for defamation, it doesn't necessarily extend to the separate claim for tortious interference with contract. Was that an argument that was made to the district court? Judge, we didn't make the argument to the district court, and I would just, I would follow up by saying this. We couldn't have made that argument to the district court because the Virginia Supreme Court just decided the case, decided the case some months, six months or so after the Rule 11 hearing took place. So we didn't have the benefit of Zhivago growth. We didn't have the benefit of the Virginia Supreme Court's verification of the reach of Donahoe. There is nothing in any case that would have put us on notice that this is an argument that we should have raised. But clearly, in Zhivago growth, clearly, and I would submit to your honor, without any hesitation, the Virginia Supreme Court said that absolute privilege does not apply to tortious interference. Again, we filed a copy of the case as document 28, and the site is 863 Southeast 2nd, 684. Mr. Biss, let me, in the time you have left, I wanted to get in an additional question. It's just a different tact. But under Rule 11, C5, the rule states that the court must not impose a monetary sanction against a represented party, who would be Mrs. Zlakova, for violating Rule 11, B2, which is that the claims are not warranted by existing law or their frivolous argument. And in the limited language the sanction on Mrs. Zlakova, it does not appear to me that the court ever addressed the specific provisions of Rule 11. But by the same token, I don't think you've raised that issue. So my question is, do you have a position on that? And can we consider it as to her individually? Judge, in I think our opening brief, I tried to lay out the extent to which the district court can sanction a party, sanction an attorney, under these various rules. I would submit to your honor that the district court erred, and that the sanction in this case was excessive. The district court dismissed her claim. The district court entered a monetary sanction against her. But I would submit that the district court erred in entering both forms of sanction. Number one, I don't think there should be, and I don't think the Rule 11 relief should have been granted at all. I mean, that's number one. But even if it was proper to enter relief under Rule 11 with no evidence, and with the facts being in dispute, I would submit to your honor that these are legal issues that this court could decide de novo on this appeal. All right. Thank you, Mr. Bisbee. Thank you, your honor. All right. Mr. Lee. Thank you. May it please the court. My name is Terry Reed. I am here on behalf of the appellee, Stephan Halper. And we are here seeking affirmance of the trial court's discretionary decision to impose litigation sanctions. The central question here is, did the district court abuse its discretion in opposing bad faith litigation sanctions after warning the plaintiff and her counsel of this risk when dismissing the plaintiff's earlier lawsuit against Mr. Halper? Well, I see language in the earlier decision, which the district court quoted again in the current decision, as well as the language from the Fourth Circuit, that gave a warning to Mr. Bis, but I don't see anywhere in the record that Mrs. LaClova got a warning about anything. Well, I believe the judge found that she did warn Ms., the plaintiff, Ms. LaClova. And also, I do believe that the earlier... So where is that? I don't recall seeing that anywhere. I believe it is in her, the opinion at issue here, where she said that she warned Ms. LaClova. But the district court is... Well, maybe you can find that and give that to the court later because I see specific language that put Mr. Bis on notice, but I haven't seen anywhere in any of the decisions or what limited record we have here that Ms. LaClova was on notice of anything. Okay. Well, I'd be happy to supplement the record with citations to that effect. Do we have the transcript of the hearing in the record? I don't think it is. Is that something that's been available that we could see? Yes, we have certainly no objections to it, but it was not provided to the court by the... How do we know what the... As I understand it, the district court's reasoning that the sanction was violated because it concluded that this action was frivolous based on two privileged letters. Actually, that's not completely... No. The court made two separate, distinct, independent factual findings. One is that the suit was brought for an improper purpose, and that's to harass Professor Halper, and that's under subsection B1. She made a second finding... So what's the record we have to back that up? Well, the district court's findings with respect to why the suit was filed for an improper purpose... Right. I understand that, but to have findings, you have to have a record, and that's what I'm looking for, is a record. Okay. I will account for the court the record that the district court recited to support her factual findings of improper purpose. One, she said that under this court's consular precedent that the plaintiff's counsel holds himself out as being experienced, just like Mr. Consular was. That's not clearly wrong. Mr. Biss has an extensive history of sanctionable conduct. She cited seven cases within the last two years in which Mr. Biss was either sanctioned or admonished by a court, and that did not even include this case, either in the prior admonition or in the court's finding here. Those are not clearly... All that may be true. How does any of that apply to Ms. Lakova personally? Well, according to the judge, it applies to her because she hired Mr. Biss to bring this second suit after being warned in the first suit not to harass Mr. Halper. It was her intent to harass. But that's not the only... These aren't the only factual findings. The court found that both the plaintiff and her counsel violated... I don't mean to belabor this exclusively, but basically, your only record here is a complaint and your motion for sanctions, and I'm having difficulty determining how the district court could make these findings you've recited, if that's your record. Well, the findings are based on the court's experience in two different lawsuits, Lakova I and Lakova II. It's supplemented by the judicial opinions, including the opinions of this court with respect to sanctions the first time around. Well, that covers some predisposition and justifies the warning. But the question is, if there are new facts that occur, new harm that's created, that warning earlier didn't preclude a good faith suit to redress a new harm, did it? Well, the allegation here is that the new allegation is simply repeating the prior allegations that were found to be without merit, both for... I know, but that's the question in this case. ...failure to state a claim by this court as well as the district court. I understand that, but this complaint is based on an entirely new set of facts, totally different from the earlier. It's based on the book publishing contract. The book which simply repeats the defamatory allegations, which were the defamatory allegations in the first case. Well, I know, but you're not hearing me out. She has a book contract which she didn't have before, and she alleges that Halper interfered with that contract, which was a pretty substantial contract and caused it to be ruined. Now, if those are good faith allegations and are demonstrated, I don't see how that violates a notion that you can't file a harassment action or a frivolous action. I thought she based her claim that this complaint was not in good faith on the fact that he relied on two privileged letters and he should have known that two privileged letters couldn't support it. The privileged letters and the issue of the scope of the privilege is relevant primarily to the question of was the lawsuit as filed frivolous. The district court made a preliminary finding to that separate under the rules. And where's that finding? Where's that in the record here? I think it's page nine of her opinion, but it basically, it goes through these facts, trying to get through that this has an extensive history, the violation of the court's prior warnings to plaintiff and her counsel. Can you help me before you get there? I'd like to follow you. Where in the record? I have the joint appendix here. It's, I don't think it's in the opinion. Where's the opinion? You didn't put that in there, I guess. No, for some reason, it did not make its way into the. All right. I have the opinion. All right. Let me get to it. All right. And if I could just finish off the factors that the findings that the court made that are not clearly erroneous. She, she pointed out that the, they, she had, she had warned the that this court, it relied on the representations of this court to the district court in the first case saying that it was up to the district court whether to join the course of courts that had sanctioned Mr. Bitts. That's not clearly erroneous. She recounted the fact that, that pursuant to rule 11. I understand all that, but I want to find out why this violated and what her reason was. And if I understand correctly, and I'm now reading from the opinion, the court found that Halper's counsel's letters were protected by the absolute privilege, litigation privilege, making the filing of the pending lawsuit by Lokova and Bitts frivolous and without merit. Now, if she's wrong about that, and it's not frivolous and without merit, then her sanctions are inappropriate, right? No. Now, give me why. Because there are two separate findings. They're factual findings that need to be reversed as being clearly, erroneous to be reversed. Okay. One is that the complaint was filed for the bad faith purpose of harassing Mr. Halper. And this can only be seen against the backdrop of the prior two years of litigation. Second, you can only reach that conclusion if this litigation was frivolous. If this litigation... No. What if she gets into an automobile accident since the last time? She can't sue for it? I mean, come on. No, but... You're talking about an automobile accident by the same person, over the same matter. Well, it is. We have a book deal that was not involved before. And the book deal, she was going to publish a book. And she alleges that the book deal was destroyed by these letters. And she makes specific allegations on that. Now, the district court says that's frivolous. Therefore, it's harassing. If it's not frivolous, she can't draw that conclusion. No, she doesn't have to make a frivolous finding to find this was for improper purpose. She made it. Yes, she did make it. And I'll be happy to get that. Her frivolousness was based on the three factors in Mansfield. One, was the statement made preliminary to proposed proceeding? She answered yes. And that was quite frankly... Wait a minute. Wait a minute, counsel. Counsel, stop. What's the record support for that? That it was made preliminary to a proposed proceeding. She went through the letters themselves, which described the proposed proceeding, the grievances, the damages... Well, I've read through the letters. I've read through the letters and I don't see a proposed proceeding. Where is it? It's the proceeding to seek damages unless there's a cease and desist and entering settlement negotiations within two weeks to avoid litigation, which is the purpose of a demand letter. What if we conclude... Well, that's a conclusion that you could... Sir, what if we conclude that those letters were not privileged with respect to tortuous interference? Then you would have... They allege with respect to defamation, they're not privileged also because there wasn't a good faith effort to sue. But let's go to the second one, which is much clearer. There's a thrust of the main claim is that there was an interference with her publishing contracts. And the district court concluded at the end, after all the analysis, accordingly, the court found that helper's counsel demand letters were clearly subject to the absolute privilege, that plaintiff was on explicit notice that the privilege was being invoked and that the plaintiff was warned about the consequences of filing a lawsuit based on these privileged letters. By filing this lawsuit and failing to withdraw it under rule 11, safe harbor period, plaintiff and counsel violated both rule 11 and the court's admonition to locum of one. And it says for these reasons, it issues sanctions. Now, several of those propositions are being challenged. And one of them is the letters were not privileged. And there seems to be some pretty good argument there. And the second was that, uh, you know, I'm sorry. Yeah, go ahead. The whole basis of the court's ruling has to be in order to find this to be harassing or to be violated earlier sanctions. This litigation has to be frivolous as the court. That's what the court said. We respectfully disagree. We think that you don't have to have a frivolous suit in order to have an I'm asking you tell you what the court found. The district court relied on the privilege of the letters and concluded because the privilege was there and and plaintiffs knew about it. I mean, lack of a knew about the letters being privileged. Therefore, it was harassing and frivolous. And therefore, the judge made three to propose proceeding to the statement was related to a proceeding contemplated in good faith. She ruled that she found this a factual matter that and based on what record again? What? Based on what record? Well, the record was what was presented to her by both parties. Mr Miss had a full and fair opportunity to present any piece of the record on any of these topics that he wished well, under the decision in Mansfield, that's going to be your burden to show that there was a proceeding contemplated in good faith and under serious. Yes, it is. And under serious consideration and what I'm looking for is the evidence in the record that shows that your honor under rule 11, the trial court sits as the trier of that. We're back. We're back on. No, no, no. We're back on the application of absolute privilege. And that's that's where these restatement issues come up. You may get to the sanction issue after that, depending on what you find. But in order to determine absolute privilege, that has to be shown. And if you haven't shown the absolute privilege, then you don't get any farther than that. Well, all I can tell you is that the three Mansfield factors were identified and applied by the court, and she made factual findings. And those factual findings are not clearly erroneous. There's nothing in this record to say that the statement was not preliminary to a proposed proceeding, that it was not undertaken in good faith, and that it was disclosed to persons that other that had no interest in the matter. There is no evidence to support that. Is that a matter of proof for the lawsuit? In other words, the lawsuit alleged that it was a good faith. The letters were not in good faith. And the lawsuit alleged that those letters were not intended. And the letters, this is what the lawsuit alleged. Now, isn't that a matter of proof? It may ultimately be a matter of proof, but for purposes of a rule 11 proceeding, it is not. It is what is germane and relevant and adduced in the rule 11 proceeding. And right at this particular proceeding wasn't, you know, even though it occurred at the beginning of the case, it wasn't an isolation. It was an extension of the earlier lawsuit. In this case, we have just the two letters, right? And we have the complaint. That's all record, right? Well, that is the only record that has been a whole record in this lawsuit that the court could have considered. Well, no, that's not true. The court can consider the two years she spent on the Provo One. I understand that. I'm talking about whether this satisfied, this litigation violated her earlier order. We know the history. She said it did. I understand she said it did, but the only thing we have in the record to support that is the complaint and the two letters. And her prior admonition as upheld by this court, when this court said we approve of her wait and see approach, she saw enough. And as a district court judge, she's entitled. All right, let's stick with that. She saw enough. What did she see? She saw that the plaintiff was returning to repeat the same defamatory allegations against the professor in a news suit when she had been told she had to be careful because she was close to being sanctioned the first time, but without prejudice was given leave to make sure she didn't repeat the same conduct. Now, that conduct is simply outrageous. She called Mr. Halpern a rat fucker. That wasn't in this suit. But let me, I want to ask you the same question I put to Mr. Biss, and that deals with the Rule 11 C5 limitation on monetary sanctions against a represented party. I'm not seeing where the district court dealt with that prohibition at all. First off, I would, if this is directed at me, I would respond with the point that you initially raised, which is this was not raised either in the district court or in this court, and therefore should be considered a waive. But more importantly, I don't think... Well, there are two circuits that have considered this circumstance, and they have, where the issue was not raised, both the Ninth and the Second Circuit have considered this. And they posited it to be an inherent conflict between the attorney and the client, where you are, in effect, the sanctions have been imposed, and now the attorney has a joint tortfeasor with him for the payment of the sanctions, and that permitted them to consider the issue. So if we did consider it... Well, first off... I don't see where the, that the record shows that the district court complied with the rule as to Ms. Lacova. Well, I disagree with that, but I also would remind the court that if there is a conflict of interest on the other side of the V, that's, that may be a reason why issues are not raised, and it's not our responsibility on this side of the V. As to the issue of whether there was a basis to go after Lacova, the district court made expressed findings under B-1 and B-2. So, and your, your invocation of C is misplaced if, in fact, there is a finding that... Well, how could it be misplaced if, how could it be misplaced if you cannot impose the sanction for a violation of B-2? And you just said it was a violation of B-2. It's a violation of B-1 and B-2 separately, independently. That's what I've been saying. And so the B-1 is a legal basis under Rule 11 for imposing sanctions against the party, because it was their intent to harass the plaintiff, or I'm sorry, harass the defendant. Mr. Reed, before you end your argument, I want to ask you a question about the third element of the litigation privilege and the issue of disclosure to interested persons. The district court found that that element wasn't in dispute because the letters were sent only to interested parties, that is the publishers of the allegedly defamatory marketing material. But Lacova, in her complaint, alleged that these threats were escalated to CBS Corporation, which was Simon and Schuster's parent company. And the district court didn't at all engage with that. Isn't that, I mean, that seems to me problematic on its face. Well, I think that there is no distinction between the publisher and the parent organization. How do we know that? How do we know that? I mean, we know nothing about the structure of these corporations and whether or not the CBS has any day-to-day authority over the operations. We don't know any of that. And we don't even know exactly what it means to be an interested person. Well, the interested person aspect has a long history. It basically means you can't go around broadcasting it to third parties. You've got to focus your request to parties that are the publishers, the speakers of the, in this case, the defamatory internet marketing material. Those were the only people that were contacted. So, and those are the subject of the two letters. If I could just jump to one issue, that's the tortious interference claim. First, I would like to say that the plaintiff and her counsel did not raise that issue in the district court. Instead, what they raised was an argument that they presented to the district court and she squarely rejected incorrectly. And that is the argument that there's no such thing as a privilege prior to the filing of the lawsuit. They cited the Lindemann case for that. It doesn't hold that. The Manso case basically made clear that man letters are protected. Second, so the issue is whether the intervening opinion from the Virginia Supreme Court and the VAGOS, I guess, is how it's pronounced. First off, you don't need to address that one because they never raised this issue. Instead, they attacked whether a preliminary, a communication preliminary to a lawsuit, which is not what the case is here. Second, this court in the prior iteration of this case, in October 1, ruled that if a tortious interference case is predicated on a defamation, which this clearly is, that the tortious interference claim is invalid. And in fact, that's one of the reasons why this court dismissed or upheld the dismissal, quite frankly, of the prior tortious interference claim in October 1. So regardless of the scope of the VAGOS opinion, under these facts, under the law of this case, in essence, that by bringing a defamation claim that was barred by absolute privilege and bringing a tortious interference claim, which was inextricably tied to the defamation claim, the end of the defamation claim is the of the portion. I don't understand the linkage because in reading the complaint, basically, they say the letters were sent regardless of the content. They also allege the letters were defamatory. But set that aside, they also say the letters were sent to destroy the publishing contract and that it succeeded. Well, that doesn't make it, you could throw out the whole defamation claim and they would still have a cause of action for tortious interference, wouldn't they? Well, according to this court in Locova 1, citing the Virginia law as established in the Klein case, that if a tortious interference claim is predicated on a defamation... It's not predicated. There's no allegation that the tortious interference was based on defamation. The allegation is the tortious interference was based on letters that persuaded the publishers to end the contract and that the intent was to do that. But again, if the tort is the defamation, then... Why don't you stick with my hypothesis? According to this court, that doesn't state a claim. And so, now, of course, this whole issue wasn't presented to the district court, so you don't have the benefit of the district court responding to that. But assuming it can be raised at this stage, that would be a totally appropriate response under this court's prior precedent. Your Honor, I... Okay, yeah. I think my time might have expired. Yeah, it is. Well, we want to get a chance to air these things. Thank you. All right, Mr. Best. Best is muted. You have a couple of minutes. Judge, I'm going to waive the rest of my time. I've been listening to the argument here. I think the matter has been fully argued and briefed. All right. Well, I want to thank both counsel. We would normally come down and greet you in the courtroom, and that's a tradition we're not abandoning, but because of conditions, we can't do it. But we thank you for your arguments, and we'll adjourn court for the day.
judges: Paul V. Niemeyer, G. Steven Agee, Albert Diaz